UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RODNEY EARL BROWN,

    Petitioner,

v.

WARREN A. WILSON,

    Respondent.

Case No. 21-10547
Honorable Laurie J. Michelson

**OPINION AND ORDER
DENYING PETITIONER'S MOTION FOR RECONSIDERATION [11]**

Recently, the Court denied Rodney Brown's petition for a writ of habeas corpus and also denied Brown a certificate of appealability. Brown now asks this Court to reconsider those decisions. (ECF No. 11.) The Court does not believe it erred. But even assuming it did, the error would not alter the bottom-line decision to deny the petition. So the Court will deny Brown's motion for reconsideration.

Before turning to the merits of Brown's motion, the Court clarifies the procedure for seeking relief. Brown filed his motion under Eastern District of Michigan Local Rule 7.1(h) and uses the phrase "palpable" error. (ECF No. 11, PageID.2727, 2730.) But Local Rule 7.1(h) was revised over a year ago and the "palpable defect" standard was removed. More relevant, though, is that the revised rule does not permit a motion for reconsideration of a final order. Here, the Court denied Brown's petition and entered judgment. So Local Rule 7.1(h) is inapplicable.

Although Brown used the wrong procedural vehicle, the Court will treat his motion as pursuant to Federal Rule Civil Procedure 60(b)(1), or, possibly, Rule 59(e). Those rules permit relief from a final order or judgment when the federal district court erred. *See United States v. Reyes*, 307 F.3d 451, 455 (6th Cir. 2002) (providing that relief may be granted under Rule 60(b)(1) "when the judge has made a substantive mistake of law or fact in the final judgment or order"); *Bogseth v. Schiebner*, No. 22-1042, 2022 WL 2811665, at *4 (6th Cir. July 7, 2022) (providing that relief may be granted under Rule 59(e) where there was "a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice").

Turning to the merits, Brown raised a slew of prosecutorial-misconduct claims in his petition. He now claims the Court erred in not granting the writ based on one of them: the prosecutor's use of Brown's call to a friend from jail where he used the term "crossfire."

The basis for this claim was previously presented at length, *see Brown v. Wilson*, No. 21-10547, 2022 WL 4587142, at *2–5 (E.D. Mich. Sept. 29, 2022); so a brief recap suffices here. Brown was charged with shooting Larnel Brown and George Parks outside of a bar. Brown's defense at trial was that he was attacked by a large man, the man got him in a chokehold, Brown drew his gun in self-defense, and as he and his attacker wrestled for the gun, it went off four times. In other words, Brown's trial defense was that Larnel and Parks were inadvertently shot when he was trying to defend himself from an attacker. And as discussed in the prior opinion, at trial, the

prosecutor first elicited testimony from Brown that "crossfire" meant multiple people shooting at each other. She then played snippets of a recorded, jailhouse call where Brown told a friend that he had been caught in "crossfire." In his petition, Brown claimed that this was prosecutorial misconduct because he had used the term "crossfire" metaphorically on the call, yet the prosecutor's setup made the jury think that he had told his friend that there had been literal "crossfire" outside the bar, i.e., multiple people shooting at each other. And, of course, a multi-gun battle was inconsistent with his self-defense account.

In addressing this claim, the Court found that because the Michigan Court of Appeals had rejected this claim on the merits, Brown needed to clear § 2254(d) to obtain relief. *Brown* 2022 WL 4587142, at *3. And the Court found that Brown could not do so for two reasons. First, said the Court, "There is nothing false about Brown's testimony or the recording of his call. And Brown presents no evidence that the prosecutor in fact knew that Brown had used the term 'crossfire' metaphorically during the jailhouse call and, despite that knowledge, elicited the literal definition from Brown at trial." *Id.* at *4. "And even assuming that is what happened," this Court continued, "it is at least arguable that the prosecutor's more general point—that Brown's account on the call did not match his account at trial—was true. And if that point is arguable, it cannot have been unreasonable for the Michigan Court of Appeals to find that '[Brown's] insistence that he used "crossfire" metaphorically to indicate that he was caught in the middle of Larnel's fight with [Jenkins] misses the point of the prosecutor's line of questioning, which was less about "crossfire" than

3

about the differences in [Brown's] accounts of the shooting incident.'" *Id.* (quoting *People v. Brown*, No. 346401, 2019 WL 7206131, at *3 (Mich. Ct. App. Dec. 26, 2019)).

In his motion for reconsideration, Brown seems to take issue with both of the Court's bases for rejecting his claim. As to the first, Brown says that the jury only heard snippets of the phone call but that it would have been obvious to anyone who listened to the whole call that he was not using the word "crossfire" to mean multiple guns firing. (*See* ECF No. 11, PageID.2732–2733.) And says Brown, there was "no physical or scientific evidence of a multiple gun fight," and the only casing recovered from the scene were from a single gun. (ECF No. 11, PageID.2730.) Because the prosecutor listened to the whole call and knew about the casing belonging to one gun, Brown says she must have known that he had used the word "crossfire" metaphorically on the call. So Brown believes this Court erred in finding that Brown "present[ed] no evidence that the prosecutor in fact knew that [he] had used the term 'crossfire' metaphorically during the jailhouse call and, despite that knowledge, elicited the literal definition from [him] at trial." (*See* ECF No. 11, PageID.2731.)

As for the Court's alternate basis for rejecting his claim—that the prosecutor's more general point about Brown changing his story being "at least arguably true"— Brown says that "[t]he point is not arguable." (ECF No. 11, PageID.2731.) According to Brown, "this Court, as did the state courts, falsely assumed: (1) the jail phone call made by Petitioner was the first opportunity for Petitioner to discuss the details and events of what happened; (2) Petitioner did not know his calls were being recorded; and, (3) Petitioner was voluntarily giving a detailed account of what happened that

4

night to his good friend." (ECF No. 11, PageID.2730.) Apparently, the upshot of these points is that Brown did not tell his friend anything that was contrary to the account he gave to the jury. Brown thus apparently argues that even if the prosecutor used the snippets of the recorded call as part of a more general point about two different accounts, the prosecutor still engaged in misconduct.

This is a rehash of Brown's prior arguments. It evinces no error satisfying Rule 59 or 60. And the Court (again) finds that Brown has not cleared 28 U.S.C. § 2254(d)'s bar to relief.

Consider (again) what the Michigan Court of Appeals said. "Defendant's insistence that he used 'crossfire' metaphorically to indicate that he was caught in the middle of Larnel's fight with Terrell misses *the point of the prosecutor's line of questioning, which was less about 'crossfire' than about the differences in defendant's accounts of the shooting incident*." *People v. Brown*, No. 346401, 2019 WL 7206131, at *3 (Mich. Ct. App. Dec. 26, 2019) (emphasis added). The Michigan Court of Appeals continued, "*The prosecutor set the snippet of recorded conversation in the context of questions aimed at showing that defendant's initial account of his injury did not entail self-defense against a larger man who was strangling him*. The record evidence shows that defendant told medical personnel who treated his injury that he was 'hit with [a] stray bullet in left hand.'" *Id.* (emphasis added). "In addition," the state court continued, "he told Ricki in the recorded conversation that he was caught in crossfire." *Id.* "Regardless of the meaning defendant gave 'crossfire,'" said the court, "these explanations differ from what he told the jury, i.e., that he pulled his gun because a

5

taller, heavier man was choking him and he thought he was going to die." *Id.* Thus, the Michigan Court of Appeals concluded that "the prosecutor in this case did not present evidence that she knew to be false or misleading. Rather, the prosecutor's comments arguably were attempts to piece defendant's early explanations of his injury into a coherent whole for purposes of comparing them with his later account." *Id.*

The Michigan Court of Appeals also addressed the prosecutor's reference to the jailhouse call during her closing arguments. The court explained, "The thrust of the prosecutor's closing argument was that defendant did not claim that he pulled his gun because someone was choking him until after police were able to link his gun to the shooting. The prosecutor grounded this argument in the evidence admitted at trial and in reasonable inferences arising therefrom." *Brown*, 2019 WL 7206131, at *4.

The above reasoning did not involve an unreasonable application of U.S. Supreme Court precedent or an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d).

True, if, as Brown argues, the prosecutor knew that Brown was using "crossfire" metaphorically on the call, there was little reason for her to play the snippets of the call. On cross exam, Brown already admitted that there had not been literal crossfire outside the bar: "Q And that night, did you see two or more guns shooting at all, sir? A Did I see two or more, *no, I didn't*. Q So, would you describe what happened that night as a crossfire situation or not a crossfire situation? *A Not*

6

*a crossfire.*" (ECF No. 6-15, PageID.1599 (emphasis added).) So if the prosecutor knew that Brown had used "crossfire" metaphorically on the call, then she should have known that the call was not inconsistent with that testimony. And if the prosecutor knew that Brown was using "crossfire" metaphorically on the call, then the snippets of the call were also not contrary to Brown's account at trial that the gun went off as he wrestled with his attacker. So the prosecutor's use of the call for that purpose would not have been proper, either.

But as the prosecutor's questions illustrate, and as the Michigan Court of Appeals found, the snippets of the call were nestled within a broader attempt to show that Brown did not tell his friend what he told to the jury. Not long before playing the snippets of the call, the prosecutor and Brown had the following exchange: "Q And your position in this case is that you were defending yourself because you were almost choked to death; is that fair to say? A Yes, ma'am. *Q And did you ever share that story with any of your friends or family on a jail call, sir? Did you ever tell them, hey, this is what happened, I got choked and— A Not that I remember.*" (ECF No. 6-15, PageID.1600 (emphasis added).) And after playing one of the snippets of the call, the prosecutor and Brown had this exchange: "Q And you never told this friend, Ricki, a good friend of yours about the claim of you being choked or hit, correct, sir? A Yes, I did. *Q On the jail calls you did, sir? A Not on the jail call.*" (ECF No. 6-15, PageID.1604.) True, playing just the "crossfire" snippets of the call did not do much to establish that Brown had not told his friend about the attacker—that would have been better demonstrated by playing the entire call. But it was not unreasonable for

7

the Michigan Court of Appeals to find that "[t]he prosecutor set the snippet of recorded conversation in the context of questions aimed at showing that defendant's initial account of his injury did not entail self-defense against a larger man who was strangling him" and that "the point of the prosecutor's line of questioning" "was less about 'crossfire' than about the differences in defendant's accounts of the shooting incident." *People v. Brown*, No. 346401, 2019 WL 7206131, at *3 (Mich. Ct. App. Dec. 26, 2019). Given the context in which the snippets were played, the Court does not believe that the Michigan Court of Appeals was unreasonable in finding that the prosecutor did not engage in misconduct. *See* 28 U.S.C. § 2254(d).

And even supposing that it was entirely improper for the prosecutor to have used snippets of the call, relief would not be warranted unless the misconduct rose to the level of a due process violation. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (asking "whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process").

And on that front, the Michigan Court of Appeals stated, "Even if we were to conclude [that the portion of the prosecutor's closing argument referencing 'crossfire' was improper], defendant would not be entitled to appellate relief because he cannot demonstrate that the prosecutor's conduct affected his substantial rights." *People v. Brown*, No. 346401, 2019 WL 7206131, at *4 (Mich. Ct. App. Dec. 26, 2019). "Prior to playing the audio clips," the appeals court explained, "defendant testified that he did not see multiple guns shooting on the night of the incident, and that the incident did not involve crossfire. After playing the first audio clip, the prosecutor asked defendant

8

if he was telling Ricki that he 'got caught in the crossfire,' and defendant answered: 'Of their fight. You didn't play the rest of it.'" *Id.* The Michigan Court of Appeals explained, "Considering defendant's prior testimony and his response to the prosecutor's statement, the jury was aware that defendant disagreed with the prosecutor's characterization of the conversation and that defendant maintained that he was simply caught in the midst of 'their fight.'" *Id.* The Michigan Court of Appeals then went on to summarize the considerable inculpatory evidence against Brown, including eyewitnesses who testified that they saw Brown fire in the direction Larnel and Jenkins' fight. *See id.* at *5.

This alternative rationale did not involve an unreasonable application of U.S. Supreme Court precedent or an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). Brown had told the jury that on the night of the shooting there was no crossfire, and, as Brown himself has argued, there was no physical evidence of multiple firearms. So the jury quite likely understood that there had been no literal crossfire outside the bar, and thus, probably did not give much weight to Brown's use of "crossfire" on the call to his friend. Moreover, as the Michigan Court of Appeals pointed out, Brown was able to, at least in part, tell the jury that he had not used the term "crossfire" literally on the call: "Q And you're telling them you got caught in the crossfire? *A Of their fight. You didn't play the rest of it.* Q Okay, but the portion I played, sir, I believe when I asked you about the definition of crossfire you indicated that it suggested two or more guns shooting; do you recall telling us that? A Yes, *based off of how you made the scenario, yes.* Q Well, I gave you—what was your

9

definition, sir, you were free to say anything you wanted. A Okay." (ECF No. 6-15, PageID.1603 (emphases added).) Further, as the Michigan Court of Appeals also recited, 2019 WL 7206131, at *5, there was considerable inculpatory evidence introduced against Brown; that evidence reduced the prejudicial effect of the prosecutor's use of the recorded call. In all, this Court cannot say that the Michigan Court of Appeals was unreasonable in finding the prosecutor's use of the jailhouse call and associated arguments did not deprive Brown of his "substantial rights."

So the Court (again) concludes that § 2254(d) precludes granting a writ based on Brown's claim that the prosecutor engaged in misconduct by giving the jury the false impression that he told his friend that there were multiple people shooting at each other.

\* \* \*

For the reasons given, the Court DENIES Brown's motion (ECF No. 11).

SO ORDERED.

Dated: November 2, 2022

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE